UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASNAT REALTY, LLC and<br>EVERGREEN POWER, LLC,<br><br>    Plaintiffs<br>v.<br><br>STATE AUTOMOBILE MUTUAL<br>INSURANCE COMPANY,<br><br>    Defendant. | CIVIL ACTION NO.<br>3:12-cv-01794 |
| GRANT MACKAY COMPANY, INC.,<br><br>    Intervenor,<br>v.<br><br>ASNAT REALTY, LLC,<br>EVERGREEN POWER, LLC,<br>URI KAUFMAN, and<br>IRA SCHWARTZ<br><br>    Defendants. | |

## COMPLAINT IN INTERVENTION AND THIRD-PARTY COMPLAINT

Intervenor and Third-Party Plaintiff Grant Mackay Company, Inc. ("Grant Mackay") by and through its counsel for its complaint against Plaintiffs Asnat Realty, LLC and Evergreen Power, LLC and Third-Party Defendants Uri Kaufman and Ira Schwartz, states the following:

### PARTIES AND JURISDICTION

1. Grant Mackay is a Utah Corporation with its principal place of business in Bountiful, Utah. Grant Mackay is licensed to do business in the State of Connecticut.

20974672.1

2. Asnat Realty, LLC ("Asnat") is a Delaware limited liability company with its principal place of business in Bayside, New York.

3. Evergreen Power, LLC ("Evergreen Power") is a Delaware limited liability company with its principal place of business in Bayside, New York.

4. Third-Party Defendant Uri Kaufman is a citizen of New York.

5. Third-Party Defendant Ira Schwartz is a citizen of New York.

6. Defendant State Automobile Mutual Insurance Company ("State Auto") is an Ohio corporation with its principal place of business in Columbus, Ohio.

7. The amount in controversy in this dispute exceeds $75,000.

8. This court has jurisdiction pursuant to 28 U.S.C.A. § 1332.

## BACKGROUND

9. From 1929 until 1992 United Illuminating Company ("UI") operated an electrical power plant on a man-made island in the middle of the Mill River located south of Grand Avenue in New Haven, CT. The site where the plant is located is referred to as English Station.

10. UI's activities at English Station involved the use and storage of equipment and oil, both containing Polychlorinated biphenyls ("PCBs").

11. PCBs are a class of human-made chemicals whose manufacture, along with many of its uses, was banned by the United States Environmental Protection Agency ("EPA") in 1979. PCBs have been shown to cause cancer in animals and to cause other health effects in animals and humans including, but not limited to, effects on the immune system, reproductive system, endocrine system, and nervous system.

12. UI operated six PCB transformers, seventy large high voltage capacitors, and eight pieces of PCB-contaminated electrical equipment including additional transformers and circuit breakers at the English Station site.

13. UI also operated two PCB storage areas at the English Station site.

14. On or about August 16, 2000, UI transferred the English Station site to Quinnipiac Energy.

15. On or about December 9, 2006, Quinnipiac Energy transferred Parcel A of the English Station site to Evergreen Power.

16. On or about December 13, 2006 Quinnipiac Energy transferred Parcel B of the English Station site to Asnat.

17. Third-Party Defendant Uri Kaufmann is a managing member of both Evergreen Power and Asnat and is responsible for the day to day activities of these entities.

18. Third-Party Defendant Ira Schwartz is a managing member of both Evergreen Power and Asnat and is responsible for the day to day activities of these entities.

19. By September of 2005 and continuing thereafter, Mr. Kaufman participated in discussions with Quinnipiac Energy and its environmental consultant, Advanced Environmental Interface, Inc. ("AEI") regarding environmental investigation and remediation options and costs at the English Station site.

20. By December 14, 2006 and continuing thereafter, Mr. Kaufman and Mr. Schwartz sought environmental remediation information from AEI and made decisions related to environmental conditions on the English Station site.

21. On or about May 22, 2007, EPA Region 1 conditionally approved a PCB cleanup plan for Parcel A of the English Station site.

22. By November 23, 2007 and continuing thereafter, Asnat, Evergreen Power, Mr. Kaufman, and Mr. Schwartz directed work to be conducted on the English Station site that disturbed the hazardous conditions at the English Station site and did not comply with the conditions in the EPA Region 1 conditional approval letter.

23. On or about May 19, 2008, Asnat, Evergreen Power, Mr. Kaufman, and Mr. Schwartz were made aware that the PCB contamination on Parcel A of the Site was even more widespread than was originally reported and sample results documented the presence of PCBs at tens of thousands of times the regulatory limits.

24. On or about January 19, 2011, Asnat and Evergreen Power contracted with United Industrial Services ("United") to remove and dispose of approximately 4,300 gallons of transformer oil from the English Station site ("Waste Transformer Oil").

25. On or about January 19, 2011, Mehboob Shah, Asnat's and Evergreen Power's manager, certified, via a Waste Stream Profile Sheet, that the Waste Transformer Oil contained less than forty-nine ppm PCBs.

26. On or about January 20, 2011, UI sampled the Waste Transformer Oil and discovered it contained in excess of 100,000 ppm PCBs.

27. On or before March 4, 2011, the Commissioner of the Connecticut Department of Energy and Environmental Protection ("DEEP") requested from Asnat's and Evergreen Power's consultant a plan detailing the actions to be taken to investigate, and as needed, decontaminate, the PCBs and other hazardous contaminants in and around the buildings to make the buildings safe for demolition, including but not limited to, investigation of the nature and extent of PCB contamination and steps necessary to ensure that such remediation has been effective.

20974672.1

28.     On or about March 18, 2011, EPA Region 1 issued a subpoena to Asnat and Evergreen Power requiring that they submit an inventory of all potentially contaminated equipment on the English Station site.

29.     During an inspection conducted on March 22, 2011, DEEP employees observed that warning signs that DEEP had required to be posted in March 2005 had been removed and that persons had placed equipment and metal products on the PCB contaminated soil.

30.     In or about May, 2011, Mr. Kaufman on behalf of Asnat and Evergreen Power began negotiating an agreement with Grant Mackay relating to the demolition of all buildings and structures on the English Station site except for a 28,000 square feet building.

31.     During these negotiations, Mr. Kaufman on behalf of Asnat and Evergreen Power provided Grant Mackay with studies of the site performed by AEI and an asbestos survey. Mr. Kaufman represented that no work had been done on the site subsequent to the issuance of the studies of the site performed by AEI and an asbestos survey.

32.     Mr. Kaufman, Asnat, and Evergreen Power intentionally withheld information from Grant Mackay regarding the additional contamination to the site which resulted from work directed by Mr. Kaufman, Mr. Schwartz, Asnat, and Evergreen Power from November 2007 until January 2011.

33.     Relying on the information provided to it by Mr. Kaufman, Asnat, and Evergreen Power, Grant Mackay entered into a contract with Asnat and Evergreen Power dated June 30, 2011 (the "Contract").

34.     The Contract required Grant Mackay to demolish all buildings and structures on the English Station site except for a 28,000 square feet building, to abate and dispose of PCBs located inside the large power plant located at the south portion of the English Station site (which

included 3-10 drums, crane rail wipe down & transformer spills), abate asbestos, and pay Asnat and Evergreen Power an amount not to exceed $50,000 to pay a licensed environmental professional.

35. In exchange for this work, Grant Mackay would be entitled to the scrap metal and resource recovery assets removed from the demolished buildings.

36. The Contract specifically **excluded**: (a) "materials encountered that are not in the asbestos survey and/or environmental survey provided by" Uri Kaufmann, Asnat, and Evergreen Power and (b) "[b]elow grade demolition and remediation including, without limitation, any below ground PCB remediation."

37. On or about June 16, 2011, Grant Mackay entered into a subcontract with Classic Environmental, Inc. ("Classic") to perform asbestos abatement at the English Station site.

38. On or about September 14, 2011, Classic began performance of the asbestos abatement and continued to do so until February 9, 2012.

39. The work performed by Classic cost Grant Mackay in excess of $750,000.

40. On or about September 14, 2011, the EPA Region 1 issued an administrative complaint to Asnat and Evergreen Power regarding violations of the federal Toxic Substance Control Act and PCB regulations arising from the activities associated with the January 2011 shipment of Waste Transformer Oil. The EPA claimed that Asnat and Evergreen Power failed to comply with manifest requirements for the shipment of the Waste Transformer Oil and failed to notify the EPA of PCB waste activities at the English Station site.

41. On or about September 21, 2011, Asnat and Evergreen Power submitted an eleven page inventory of more than two hundred items potentially contaminated by PCBs located inside the former electrical power plant on the English Station site. The inventory included

20974672.1

transformers, more than one hundred unmarked liquid storage drums, and other electrical equipment items.

42. On or about November 10, 2011, Grant Mackay, as the authorized agent for Asnat and Evergreen Power, filed Applications to Demolish with the City of New Haven, Connecticut.

43. On or about December 19, 2011, DEEP wrote to Asnat and Evergreen Power requesting any environmental reports, studies, figures, tables, plans, laboratory data, and/or test results related to the English Station site and any and all documents related to any implementation of the Evergreen Site PCB Cleanup Plan.

44. Asnat and Evergreen Power failed to provide any documents requested by DEEP in its December 19, 2011 letter.

45. On or about December 22, 2011, DEEP wrote to Asnat and Evergreen Power notifying them that DEEP had information indicating the presence of contamination at the English Station site and that no demolition should take place prior to remediation of contamination and full compliance with all applicable federal and state laws and regulations.

46. On or about January 11, 2012, EPA Region 1 wrote to Attorney Victor Bolden, corporation counsel for the City of New Haven, informing him that Asnat and Evergreen Power have not submitted the site characterization to evaluate the extent of PCB contamination at the English Station site. EPA Region 1 further stated it would "have serious concerns should any demolition of the buildings take place prior to the completion of the ongoing characterization of the power plant building for PCB contamination as well as the completion of any necessary EPA-approved PCB cleanup plan for the site."

47. As the owners of the English Station site, Asnat and Evergreen Power were responsible for the ongoing characterization of the power plant building for PCB contamination

7

as well as the completion of any necessary EPA-approved PCB cleanup plan for any materials encountered that are not in the asbestos survey and/or environmental survey provided by Asnat and Evergreen Power or any below ground PCBs.

48. On or about February 7, 2012, Asnat and Evergreen Power emailed to DEEP a copy of a PCB Self Implementing Plan presenting a strategy for remediation of building materials contaminated with PCBs in the former electrical power plant on the English Station site.

49. On February 9, 2012 DEEP issued a Cease and Desist Order finding that "[d]ue to the presence of PCBs and other hazardous contaminants in the soil, sediment, and interior concrete floors and the presence of PCB contaminated equipment in the buildings, demolition and scrapping activities at the [English Station site], without first properly characterizing and disposing of PCB and other hazardous contaminants are likely to result in imminent and substantial damage to the environment or to public health by exposing the public and/or the environment to PCBs and other hazardous contaminants."

50. The Cease and Desist Order ordered "[e]ffective immediately upon the issuance of this Cease and Desist Order, the Respondents shall ensure that no demolition activities of any kind are allowed on the [English Station] site until the DEEP and the EPA are satisfied that the contamination on the sites has been properly characterized and remediated so as to prevent any potential for harm to human health and the environment based on demolition activities."

51. On or about April 8, 2013, DEEP issued an Administrative Order ordering that Asnat, Evergreen Power, Uri Kaufman, Ira Schwartz, Mehboob Shah, Quinnipiac, Grant Mackay, and UI to, among other things, remediate the PCBs and other hazardous contaminants

from the English Station site. DEEP also determined that the above named parties were jointly and severally liable for complying with the Administrative Order.

### COUNT I -- FRAUDULENT INDUCEMENT AGAINST URI KAUFMAN, ASNAT AND EVERGREEN POWER

52. Grant Mackay incorporates and realleges paragraphs 1 through 51.

53. To inform Grant Mackay about the scope of work required under the contract, including the extent to which the English Station site contained PCBs, Uri Kaufman, Asnat, and Evergreen Power supplied Grant Mackay with an environmental survey that contained information about PCBs at the English Station site, including but not limited to the extent to which PCBs had been spilled at the site, the extent to which equipment on the site contained PCBs, and the extent to which other material at the site contained or was contaminated with PCBs.

54. The information in the environmental report about PCBs at the English Station site was false.

55. Uri Kaufman, Asnat, and Evergreen Power misrepresented the degree of contamination at the English Station site in order to induce Grant Mackay to enter into the Contract. The representations Uri Kaufman, Asnat, and Evergreen Power made regarding the degree of contamination at the English Station site were untrue, and they knew they were untrue.

56. The environmental survey that Uri Kaufman, Asnat, and Evergreen Power supplied to Grant Mackay was likely to and in fact did mislead Grant Mackay, acting reasonably under the circumstances, about the amount of PCBs that had to be removed and disposed of before Grant Mackay could demolish the buildings and structures at the English Station site.

57. Grant Mackay acted upon these representations to its injury.

58. The information contained in the environmental report was material to Grant Mackay's decision to execute the contract with Asnat and Evergreen Power.

59. Uri Kaufman, Asnat, and Evergreen Power concealed and withheld vital information regarding the level of PCB and other hazardous material contamination at the English Station site in order to induce Grant Mackay to enter into the Contract.

60. Uri Kaufman, Asnat, and Evergreen Power provided Grant Mackay with only part of the information they had regarding the level of PCB and other hazardous materials contamination at the English Station site to induce Grant Mackay to rely on this information as being a full disclosure of such contamination.

## COUNT II – BREACH OF CONTRACT AGAINST ASNAT AND EVERGREEN POWER

61. Grant Mackay incorporates and realleges paragraphs 1 through 60.

62. Asnat and Evergreen Power breached the Contract by preventing and hindering Grant Mackay's performance of its obligations under the Contract.

63. Asnat and Evergreen Power prevented and hindered Grant Mackay's performance by, including but not limited to, violating and disregarding orders and requests from the EPA and DEEP and other acts and omissions which led to the Cease and Desist Order issued by DEEP.

64. Grant Mackay was damaged by Asnat's and Evergreen Power's breach of the Contract. Grant Mackay's damages, include but are not limited to, the $750,000 it paid to Classic for asbestos abatement, loss of use of Grant Mackay's equipment that is trapped on the site by the Cease and Desist and Administrative Orders, and the value of the scrap metal Grant Mackay was not allowed to salvage.

65. Alternatively, Asnat's and Evergreen's acts and omissions prevented Grant Mackay from removing scrap metal or resource recovery assets from the site thus entitling Grant Mackay to $1,000,000 in liquidated damages.

## COUNT III – UNJUST ENRICHMENT AGAINST ASNAT, AND EVERGREEN POWER

66. Grant Mackay incorporates and realleges paragraphs 1 through 60.

67. Pleading in the alternative, the Court may determine that Grant Mackay lacks a remedy under the terms of the Contract. In such an event, Grant Mackay should be entitled to recover against Asnat and Evergreen Power under a theory of unjust enrichment.

68. Asnat and Evergreen Power benefitted from the work performed by Grant Mackay on the Project. This work includes, but is not limited to, a significant amount of asbestos abatement performed by Classic.

69. Asnat and Evergreen Power have not paid for the benefits of Grant Mackay's work, and Grant Mackay has not otherwise been compensated for this work.

70. The reason Grant Mackay was not otherwise compensated for this work is due to the wrongful acts and omissions of Asnat and Evergreen Power which led to the Cease and Desist Order preventing Grant Mackay from salvaging the scrap metal and other resource recovery assets.

## COUNT IV – RESTITUTION AGAINST ASNAT AND EVERGREEN POWER

71. Grant Mackay incorporates and realleges paragraphs 1 through 60.

72. Pleading in the alternative, Grant Mackay is entitled to recover in restitution against Asnat and Evergreen Power.

73. Grant Mackay partially performed its obligations under the Contract by abating a significant amount of asbestos.

11

74. The Cease and Desist Order issued by DEEP prevented Grant Mackay from completing its performance under the Contract.

75. Asnat and Evergreen Power benefitted from the work performed by Grant Mackay.

76. Grant Mackay has not received any compensation for its work.

77. The value of the benefit bestowed upon Asnat and Evergreen Power is equal to or greater than $750,000.

## COUNT V – INDEMNITY AGAINST URI KAUFMAN, IRA SCHWARTZ, ASNAT, AND EVERGREEN POWER

78. Grant Mackay incorporates and realleges paragraphs 1 through 60.

79. Uri Kaufman's, Ira Schwartz's, Asnat's, and Evergreen Power's negligent and/or willful acts and omissions caused or exacerbated the environmental conditions at the English Station site. These negligent and/or willful acts and omissions included, but are not limited to, improperly disposing of PCBs, falsifying Waste Stream Profile Sheets relating to the transportation and disposal of PCBs, and failing to abide by DEEP and EPA rules, regulations, and directives.

80. Uri Kaufman, Ira Schwartz, Asnat, and Evergreen Power were in control of the English Station site.

81. Grant Mackay had no knowledge of the negligent and/or willful acts and omissions causing or exacerbating the environmental conditions at the English Station site of Uri Kaufmann, Ira Schwartz, Asnat, and Evergreen Power.

82. Grant Mackay had no reason to anticipate the negligent and/or willful acts and omissions causing or exacerbating the environmental conditions at the English Station site of Uri Kaufmann, Ira Schwartz, Asnat, and Evergreen Power.

83. It was reasonable for Grant Mackay to rely on Uri Kaufman, Ira Schwartz, Asnat, and Evergreen Power **not** to act or fail to act in a manner that would cause or exacerbate the environmental conditions at the English Station site.

84. Uri Kaufman, Ira Schwartz, Asnat, and Evergreen Power owe Grant Mackay indemnification or contribution for all damages incurred or which will be incurred by Grant Mackay relating to Uri Kaufman's, Ira Schwartz's, Asnat's, and Evergreen Power's negligent and/or willful acts and omissions which caused or exacerbated the environmental conditions at the English Station site including, but not limited to, any costs arising from the remediation, investigation, or reporting of the PCB and other hazardous materials located at the English Station site.

## COUNT VI – VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT AGAINST ASNAT AND EVERGREEN POWER

85. Grant Mackay incorporates and realleges paragraphs 1 through 65.

86. Asnat and Evergreen Power are engaged in the business of industrial real estate development, including the planned demolition and re-development of the English Station, and have acted in the conduct of trade or commerce as defined in Conn. Gen. Stat. § 42-110a(4).

87. To demolish the buildings and structures on the English Station site, pursuant to the contract with Asnat and Evergreen Power, Grant Mackay was required to first dispose of a limited amount of PCBs at the site.

88. Whereas the environmental survey reported 3-10 drums containing PCBs that would need to be removed prior to demolition of the main structure, upon information and belief, there were approximately 100 drums of liquid that potentially contains PCBs that must be removed and disposed of prior to demolition of the main structure.

89. As a result of Asnat's and Evergreen Power's false representations regarding the amount of PCBs at the English Station site, Grant Mackay has suffered an ascertainable loss under Conn. Gen. Stat. § 42-110g(a).

90. Asnat and Evergreen Power could reasonably foresee that their false representations would cause Grant Mackay to incur significant damages.

91. Asnat's and Evergreen Power's deceptive acts (1) offend Connecticut public policy, including public policy embodied in the Connecticut Unfair Trade Practices Act and Connecticut common law of fraud and misrepresentation; (2) are immoral, unethical, oppressive, and unscrupulous; and (3) have caused substantial injury to the business of Grant Mackay.

92. Asnat and Evergreen Power therefore engaged in unfair or deceptive acts or practices in violation of Connecticut General Statues § 42-110a, *et seq.*

WHEREFORE, Grant Mackay requests judgment in its favor against Uri Kaufman, Ira Schwartz, Asnat, and Evergreen Power as to their respective counts as follows:

    A. Compensatory damages;

    B. Alternatively, liquidated damages;

    C. Attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g;

    D. Punitive damages pursuant to Conn. Gen. Stat. § 42-110g;

    E. Interest pursuant to Conn. Gen. Stat. § 37-3a;

    F. Costs; and

    G. Such other and further relief in law or in equity which this Court deems just and proper.

20974672.1

Dated this 15th day of July, 2013.

/s/ Ronald W. Zdrojeski
Ronald W. Zdrojeski (ct01089)
SUTHERLAND ASBILL & BRENNAN LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
*Attorneys for Grant Mackay Company, Inc.*

20974672.1

## CERTIFICATION

I hereby certify that on July 8, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of the filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Ronald W. Zdrojeski
Ronald W. Zdrojeski (ct01089)
*Attorney for Grant Mackay Company, Inc.*

20974672.1